IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JARROD BLANDIN,

    Plaintiff,

v.                                                                                       1:22-cv-00228-LF-KK

KEVIN SMITH, in his individual capacity
as New Mexico State Police Officer,
NEW MEXICO DEPARTMENT OF PUBLIC SAFETY,
DANIEL CHAVEZ, in his individual capacity,
GREGORY RAMIREZ, in his individual capacity, and
KURTIS WARD, in his individual capacity,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT NMDPS'S MOTION TO DISMISS COUNTS III AND IV**

THIS MATTER comes before the Court on defendant New Mexico Department of Public Safety's ("NMDPS") Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint for Lack of Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1), filed on November 27, 2022.  Doc. 29.  Plaintiff Jarrod Blandin filed his response on December 16, 2022.  Doc. 34.  NMDPS filed its reply on January 4, 2023.  Doc. 45.  Having read the submissions of the parties and reviewed the relevant law, the Court finds that the motion is well taken and will GRANT it.

**I.**     **Legal Standard**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a claim for "lack of subject-matter jurisdiction."  There are two types of Rule 12(b)(1) motions: facial attacks and factual attacks.  *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  "A facial attack on the complaint's allegations as to subject matter jurisdiction questions the

sufficiency of the complaint." *Id.* A factual attack, on the other hand, challenges the facts upon which subject matter jurisdiction depends. *Id*. at 1003. Here, NMDPS makes a facial attack on the Court's subject matter jurisdiction. *See* Doc. 29. When reviewing a facial attack, the Court accepts the allegations of the complaint as true. *Holt*, 46 F.3d at 1002.

"District and appellate courts have limited subject matter jurisdiction and may only hear cases when empowered to do so by the Constitution and by act of Congress." *Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir. 2007). "It has long been recognized that a federal court must, *sua sponte*, satisfy itself of its power to adjudicate in every case and at every stage of the proceedings and the court is not bound by the acts or pleadings of the parties." *Id*. (internal quotation and citation omitted); *Evitt v. Durland*, 242 F.3d 388 (Table), 2000 WL 1750512, at *2 (10th Cir. 2000) ("even if the parties do not raise the question themselves, it is our duty to address the apparent lack of jurisdiction *sua sponte*") (quoting *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 843 (10th Cir. 1988) (internal quotation marks omitted)). As the party seeking to invoke the jurisdiction of this Court, Mr. Blandin bears the burden of alleging facts that support jurisdiction. *See Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) ("Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction").

**II.    Background Facts**[1]

This case arises from Mr. Blandin's encounter with NMDPS officers at a DUI check point on May 7, 2021. Doc. 8 at 18. Mr. Blandin alleges that NMDPS Officer Kevin Smith stopped him at the DUI checkpoint. *Id*. at 3. As Mr. Blandin was looking for the button to lower

---

[1] The facts are derived from the allegations contained in the complaint, Doc. 8. The Court does not include speculation, opinions, or commentary that are not factual allegations.

the window, Officer Smith "was aggressively pounding on the car window very loudly with his flashlight." *Id*.  When Mr. Blandin rolled down the window, Officer Smith accused him of driving while intoxicated and asked him why is vehicle smelled like alcohol. *Id*. at 4.  Both Mr. Blandin and his passenger said that they do not drink. *Id*.  Officer Smith continued to insist that he smelled alcohol although there was nothing in the car that would have smelled like alcohol. *Id*.  Mr. Blandin began experiencing symptoms of PTSD. *Id*.  Mr. Blandin believed that Officer Smith was being intentionally antagonistic and aggressive. *Id.* at 5.  He informed Officer Smith that he was experiencing extreme PTSD, and Officer Smith ignored him. *Id*.

  Mr. Blandin—"in a state of panic"—called 911 asking for help and asked for a supervisor. *Id*.  Mr. Blandin heard Officer Daniel Chavez say, "Right here, sir." *Id*.  Mr. Blandin believed that Officer Chavez had identified himself as the supervisor. *Id*.  When he attempted to get Officer Chavez to get Officer Smith to back off, Officer Chavez "completely disengaged with me, acting preoccupied with something else." *Id*.

  While Mr. Blandin was distracted on the 911 call, Officer Smith continued to engage with him and asked him to put his car in park, which Mr. Blandin did immediately. *Id*. at 6.  Mr. Blandin, however, did not hear Officer Smith's next command to get out of the car because of the conversation he was having with the 911 dispatcher. *Id*.  Officer Smith then told Officer Chavez that he had tried multiple times to get Mr. Blandin out of the vehicle. *Id*.  At this point Officer Chavez reengaged and told Mr. Blandin to get out of the car or he would have him removed. *Id*.  Mr. Blandin asked the officers to move out of the way so he could exit his vehicle. *Id.* at 7.  Officer Smith did not move out of the way of Mr. Blandin's car door. *Id*.  Immediately after Mr. Blandin opened his car door, Officer Smith stepped in closer, making it hard for Mr. Blandin to exit. *Id*.  Officer Smith then reached to close the car door and "intentionally" hit Mr.

3

Blandin on the shoulder. *Id*. Mr. Blandin asked the officers not to touch him. *Id*. When Mr. Blandin walked around the car door, Officer Smith poked him in the back twice with his flashlight. *Id*. As Mr. Blandin approached the front of the vehicle, Officer Smith got directly in his face. *Id*. at 8. Meanwhile, Officer Chavez got into the driver's side of the vehicle and drove the vehicle down the street. *Id*. Officer Chavez did not mention anything about smelling alcohol. *Id.* at 8–9.

Mr. Blandin repeatedly asked Officer Smith to "deescalate." *Id*. at 9. He turned and walked backwards so "I could keep an eye on Officer Smith and so he would have to stop poking me in the back with his flashlight." *Id*. When Officer Smith stepped in close to Mr. Blandin, Mr. Blandin would take a step back. *Id*. Mr. Blandin continued to ask Officer Smith to back off, deescalate, and give him space. *Id*. Officer Smith continued to move closer to Mr. Blandin, so Mr. Blandin continued to step backwards. *Id*. Officer Smith continued to "bark" one-word commands at Mr. Blandin. *Id*. at 10. Officer Ward held up his hand briefly in a "stop" position to Officer Smith, *id.* at 11, but otherwise, Officer Chavez and Officer Ward observed Officer Smith's behavior and failed to intervene on Mr. Blandin's behalf, *id.* at 7–10.

Mr. Blandin alleges that all the officers involved were yelling one-word commands at him from all directions. *Id*. at 12. Mr. Blandin "called out" Officer Ward for being aggressive. *Id*. Officer Ward responded, "you haven't seen aggressive!" which Mr. Blandin took as a threat. *Id*. At this point, Officer Smith shoved Mr. Blandin in the chest with both hands. *Id*. Mr. Blandin then "planted [his] feet" and told Officer Smith "to keep his hands off of [him]." *Id*. Officer Smith then knocked Mr. Blandin off balance. *Id*. Mr. Blandin heard one of the officers say, "put your hands behind your back," and as he began to comply, Officer Smith "charged me, pushing me off balance, grabbed me by the waist and threw me to the ground as hard as he

4

could," causing injuries to Mr. Blandin's neck, head, leg, shoulder, and elbow. *Id*. at 13. Officer Ward yelled, "Arrest him!" *Id*. Once Mr. Blandin was on the ground, Officer Ward immediately began yelling "stop resisting," to which Mr. Blandin responded, "I'm not resisting!" *Id*.

Mr. Blandin alleges that Officer Ramirez jumped on top of him while Officer Smith put his full weight on Mr. Blandin. *Id*. The officers went through Mr. Blandin's pockets. *Id*. When Mr. Blandin accused the officers of conducting an illegal search, Officer Smith said, "No it isn't because you are under arrest." *Id*. None of the officers had told Mr. Blandin that he was under arrest. *Id*. When Mr. Balandin asked what he was under arrest for, Officer Smith said resisting and obstructing. *Id*. After they finished going through his pockets, the officers lifted Mr. Blandin to his feet. *Id.* at 14. Officer Ramirez failed to intervene. *Id*. The entire incident from Mr. Blandin exiting his vehicle to the officers arresting him took approximately two minutes. *Id*. at 16.

Mr. Blandin alleges that Officer Smith attempted to place him into the back of the police car and pressed his face against the back seat and metal plate divider. *Id*. at 14. Officer Chavez helped pull him into the car from the other side. *Id.* Mr. Blandin alleges that as Officer Smith drove him to jail, he "drove 90+ miles per hour, even while going through a construction zone, all while texting, changing lanes without signaling, overtaking another speeding car, and playing heavy metal music," in disregard for traffic laws and Mr. Blandin's safety. *Id*. at 15. According to Mr. Blandin, Officer Smith jerked the wheel causing him to slam into the interior of the police car while also verbally antagonizing him during the ride. *Id.*

Mr. Blandin alleges that the officers' conduct violated his Fourth and Fourteenth Amendment rights (Counts I–II), that NMDPS is liable for its unconstitutional custom or policy, and for failing to train and supervise its officers (Counts III–IV), that Officer Smith failed to

5

render aid to him (Count V), that Officer Smith and NMDPS caused him emotional distress (Count VI), and that Officer Smith and NMDPS committed battery (Count VII). *Id*. at 26–34. Mr. Blandin seeks a declaration that defendants' acts continued a violation of his Fourth and Fourteenth Amendment rights, and an award of compensatory damages for injuries he sustained, including medical costs, pain, suffering, humiliation, and emotional distress. *Id*. at 35. He further seeks an award of punitive and exemplary damages, pre-judgment and post-judgment interests, costs and reasonable expenses, and attorney's fees and costs. *Id*.

**III.     NMDPS's Motion and Mr. Blandin's Response**

NMDPS brought a motion to dismiss Counts III and IV pursuant to Federal Rule of Civil Procedure 12(b)(1). Doc. 29 at 4. In its motion, NMDPS contends that Counts III and IV should be dismissed because NMDPS is not a person for the purposes of 28 U.S.C. § 1983. *Id*. at 4–7. NMDPS further argues that it has not waived Eleventh Amendment immunity; therefore, the Court lacks subject matter jurisdiction over Mr. Blandin's claims against it. *Id*. at 7–9. Mr. Blandin asserts that the allegations contained in his complaint show a sufficient policy or custom to state a municipal liability claim against NMDPS pursuant to *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978). Doc. 34 at 6–7. He further contends that NMDPS waived its Eleventh Amendment immunity through the *Ex Parte Young* doctrine. Doc. 34 at 8–10.

Because NMDPS is not a "person" for the purposes of 28 U.S.C. § 1983 and because NMDPS has not waived Eleventh Amendment immunity, Counts III and IV must be dismissed.

IV. Discussion

    A. <u>NMDPS is Not a "Person" for § 1983 Purposes.</u>

A plaintiff cannot sue for damages directly pursuant to the articles and amendments of the U.S. Constitution, but instead must bring any claim for damages based on a constitutional violation under 42 U.S.C. § 1983. Section 1983 of Title 42 of the United States Code is the exclusive vehicle for vindication of substantive rights under the U.S. Constitution. *May v. Bd. of County Commissioners of Dona Ana County*, 426 F. Supp. 3d 1013, 1017–18 (D.N.M. 2019) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create any substantive rights, but merely provides the mechanism for the enforcement of existing constitutional and federal statutory rights. *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002). To assert a claim under § 1983, a plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by a federal statute or regulation, (2) that was proximately caused (3) by the conduct of a "person" (4) who acted under color of any state statute, ordinance, regulation, custom, or usage. *Summum v. City of Ogden*, 297 F.3d 995, 1000–01 (10th Cir. 2002).

It is well settled that a state agency cannot be sued under § 1983 because it is not a "person" for the purposes of § 1983. *Hull v. State of New Mexico Taxation & Revenue Department's Motor Vehicle Div.*, 179 F. App'x 445, 446 (10th Cir. 2006) (unpublished). "[Section] 1983 provides a federal forum to remedy many deprivations of civil liberties, but it

does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

NMDPS is "statutorily created in the 'executive branch' of state government with various subdivisions within that department, including the New Mexico state police division." *Roybal-Mack v. New Mexico Dep't of Pub. Safety*, 286 F. Supp. 3d 1226, 1238 (D.N.M. 2017) (citing N.M. STAT. ANN. § 9-19-4). "The New Mexico Department of Public Safety, as an arm of the State of New Mexico, is not a 'person' within the meaning of § 1983 and therefore is immune from § 1983 suits. *Gonzales v. Dep't of Pub. Safety*, 2022 WL 2457716, at *2 (D.N.M. July 6, 2022) (unpublished).

Mr. Blandin argues that the allegations contained in his amended complaint establish a *Monell* claim against NMDPS. Doc. 34 at 6–8. In *Monell*, the Supreme Court found that that local governments are "persons" for purposes of §1983 claims. *Monell*, 436 U.S. at 690–91. "But it does not follow that if municipalities are persons then so are States. States are protected by the Eleventh Amendment while municipalities are not." *Will*, 491 U.S. at 70. In *Monell*, the Supreme Court limited its holding "to local government units which are not considered part of the State for Eleventh Amendment purposes." *Monell*, 436 U.S. at 690 n.54. Thus, NMDPS is not a "person" for purposes of § 1983 because it is protected by Eleventh Amendment immunity; Mr. Blandin's claims against NMDPS must be dismissed.

B. Eleventh Amendment Immunity

Mr. Blandin asserts that although NMDPS has Eleventh Amendment immunity, it has waived immunity under the Fourteenth Amendment under the *Ex parte Young* doctrine. Doc. 34 at 3, 6–9. Contrary to Mr. Blandin's argument, NMDPS is protected by Eleventh Amendment immunity, and none of the exceptions—including the *Ex parte Young* doctrine—apply.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  The Supreme Court has construed the immunity articulated in the Eleventh Amendment to prohibit federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent.  *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).  The Eleventh Amendment guarantees "that nonconsenting States may not be sued by private individuals in federal court."  *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).  State agencies and state officials are likewise provided immunity as "an arm of the state."  *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 280–81 (1977).

There are, however, exceptions to Eleventh Amendment Immunity.  A state may voluntarily waive its immunity.  *See Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007).  Congress may abrogate Eleventh Amendment immunity pursuant to its enforcement power under section 5 of the Fourteenth Amendment to the Constitution of the United States.  *Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998).  Also, the *Ex parte Young* doctrine permits suits against state officials in their official capacities under certain circumstances.  *Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior*, 160 F.3d 602, 607–08 (10th Cir. 1998) ("The Ex parte Young doctrine is not actually an exception to Eleventh Amendment state immunity because it applies only when the lawsuit involves an action against state officials, not against the state.").

1. New Mexico Has Not Expressly Waived Immunity.

A state may voluntarily waive immunity. The Supreme Court has "insisted, however, that the State's consent be unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). New Mexico has not expressly waived its immunity from suit in federal court. In fact, New Mexico's Tort Claims Act expressly preserves its immunity. *See* N.M. STAT ANN. § 41-4-4(F) ("Nothing in Subsections B, C and D of this section shall be construed as a waiver of the immunity from liability granted by Subsection A of this section or as a waiver of the state's immunity from suit in federal court under the eleventh amendment to the United States constitution."); *see also Mescalero Apache Tribe v. State of N.M.*, 131 F.3d 1379, 1384 n.3 (10th Cir. 1997). A plaintiff may not sue a governmental entity of New Mexico or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions listed in the NMTCA. *See Begay v. State*, 1985-NMCA-117, ¶ 10, 104 N.M. 483, 487, 723 P.2d 252, 256 ("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."), rev'd on other grounds by *Smialek v. Begay*, 1986-NMSC-049, 104 N.M. 375, 721 P.2d 1306. Because New Mexico has not waived its immunity from suit in federal court, this exception does not apply to Mr. Blandin's claims against NMDPS.

2. Congress Has Not Abrogated Eleventh Amendment Immunity.

Congress may abrogate Eleventh Amendment immunity pursuant to section five of the Fourteenth Amendment if the statute explicitly states Congress's intent to do so. *Armijo v. State, Dept. of Transp.*, 2009 WL 1329192, at *3 (D.N.M. Apr. 6, 2009) (unpublished) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976)). The Supreme Court has held that Congress did not abrogate the States' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 338–45 (1979). Consequently, Eleventh Amendment immunity

extends to state defendants under that statute. Because Congress did not abrogate Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983, Mr. Blandin cannot establish a claim against NMDPS pursuant to that statute.

        3.   *Ex parte Young* Does Not Apply.

In *Ex parte Young*, the Supreme Court held the Eleventh Amendment generally does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune. *Ex parte Young*, 209 U.S. 123, 159–60 (1908). The Supreme Court "recognize[d] that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct." *Coeur d'Alene Tribe*, 521 U.S. 261, 289 (1997) (O'Connor, J., concurring).

The *Ex parte Young* doctrine allows a suit to proceed against defendant state officials if the following requirements are met: (i) the plaintiff is suing state officials rather the state itself; (ii) the plaintiff has alleged a non-frivolous violation of federal law; (iii) the plaintiff seeks prospective equitable relief rather than retroactive monetary relief from the state treasury; and (iv) the suit does not implicate special sovereignty interests. *See Elephant Butte*, 160 F.3d at 609.

Mr. Blandin cannot satisfy the first and third elements of the *Ex parte Young* doctrine. First, NMDPS is not a "state official" but an arm of the state itself; therefore, Mr. Blandin cannot meet the first element of the *Ex parte Young* doctrine. Further, Mr. Blandin cannot establish the third element because he seeks retroactive monetary relief and not prospective equitable relief. *See Lewis v. New Mexico Dept. of Health*, 261 F.3d 970, 977 (10th Cir. 2001). "[I]n applying this distinction we ask not whether the relief will require the payment of state funds, but whether the relief will remedy future rather than past wrongs." *Id*. (internal citation and quotations

11

omitted). Here, Mr. Blandin is seeking compensatory damages for an alleged violation of his constitutional rights from an incident that occurred in the past, on May 7, 2021. *See* Doc 8 at 29, 31. In other words, he is seeking retroactive monetary relief and not asking the Court to remedy a future wrong. Because Mr. Blandin's claim against NMDPS does not satisfy the elements of the *Ex parte Young* doctrine, that doctrine does not apply to circumvent NMDPS's immunity in this lawsuit.

### 4. This Court Lacks Subject Matter Jurisdiction

Eleventh Amendment immunity divests a federal court of subject matter jurisdiction. *Reyes v. First Judicial Dist. Attorney's Office*, 497 F. Supp. 3d 994, 999 (D.N.M. 2020). *see also Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) ("The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state."). Because none of the exceptions to Eleventh Amendment immunity applies, this Court lacks subject matter jurisdiction to adjudicate Mr. Blandin's claims against NMDPS. Because Eleventh Amendment immunity is jurisdictional, and jurisdictional dismissals should be without prejudice, *Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017), the Court will dismiss Counts III and IV without prejudice.

## V. Conclusion

NMDPS is not a "person" for the purposes of § 1983 because it is protected from suit by Eleventh Amendment immunity. The exceptions to immunity and the *Ex parte Young* doctrine do not apply. Consequently, the Court lacks subject matter jurisdiction as to Mr. Blandin's claims against NMDPS. Because the Court lacks subject matter jurisdiction, the Court does not address additional arguments raised by Mr. Blandin in his response that assume immunity is waived. *See* Doc. 34 at 10–15.

IT IS THEREFORE ORDERED that defendant New Mexico Department of Public Safety's Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint for Lack of Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1) (Doc. 29) is GRANTED.  Counts III and IV against NMDPS are dismissed without prejudice.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent