IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JARROD BLANDIN,

    Plaintiff,

v.                                                                  1:22-cv-00228-LF-KK

KEVIN SMITH, in his individual capacity
as New Mexico State Police Officer,
NEW MEXICO DEPARTMENT OF PUBLIC SAFETY,
DANIEL CHAVEZ, in his individual capacity,
GREGORY RAMIREZ, in his individual capacity, and
KURTIS WARD, in his individual capacity,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 1
DISMISSAL OF COUNTS I AND II OF PLIANITFF'S AMENDED COMPLAINT**

THIS MATTER comes before the Court on defendants New Mexico State Police ("NMSP") Officer Kevin Smith's, NMSP Lieutenant Daniel Chavez's, NMSP Officer Gregory Ramirez's, and NMSP Sergeant Kurtis Ward's (collectively "defendants") Motion for Partial Summary Judgment No. I: Dismissal of Counts I and II of Plaintiff's Amended Complaint, filed on December 18, 2022. Doc. 35. Plaintiff Jarrod Blandin filed his response on January 3, 2023. Doc. 42. Defendants filed their reply on January 12, 2023. Doc. 47. Having read the submissions of the parties and reviewed the relevant law, the Court finds that the motion is well taken and will GRANT it.

**I.    Background Facts and Procedural Posture**

This case arises from Mr. Blandin's encounter with NMDPS officers at a DUI check point on May 7, 2021. Doc. 8 at 18. Mr. Blandin alleges the officers' conduct during the

encounter violated his Fourth and Fourteenth Amendment rights (Counts I–II), that NMDPS is liable for its unconstitutional custom or policy, and for failing to train and supervise its officers (Counts III–IV), that Officer Smith failed to render aid to him (Count V), that Officer Smith and NMDPS caused him emotional distress (Count VI), and that Officer Smith and NMDPS committed battery (Count VII). *Id.* at 26–34. Mr. Blandin seeks a declaration that defendants' acts constituted a violation of his Fourth and Fourteenth Amendment rights, an award of compensatory damages for injuries he sustained, including medical costs, pain, suffering, humiliation, and emotional distress. *Id*. at 35. He further seeks an award of punitive and exemplary damages, pre-judgment and post-judgment interests, costs and reasonable expenses, and attorney's fees and costs. *Id*.

On December 18, 2022, defendants filed their Motion for Partial Summary Judgement No. I, seeking the dismissal of Counts I and II of Mr. Blandin's Amended Complaint. Doc. 35. Defendants argue that Counts I and II should be dismissed for two reasons. First, they argue that Mr. Blandin's claims for wrongful arrest and unreasonable search are barred because of his conviction for resisting, evading, or obstructing an officer pursuant to the *Heck*[1] doctrine. Second, defendants assert that the Court should dismiss Mr. Blandin's Fourth Amendment claims for illegal seizure, unreasonable search, excessive force, and for failure to intervene because the individual defendants are entitled to qualified immunity. Because the Court finds that the defendant officers are entitled to qualified immunity, it does not address whether Mr. Blandin's federal claims are barred under the *Heck* doctrine.

---

[1] *Heck v. Humphrey*, 512 U.S. 477 (1994).

## II. <u>Legal Standard</u>

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). A fact is "material" if under the substantive law it could affect the outcome of a lawsuit, and an issue is "genuine" if a rational juror could find in favor of the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

**III.     Statement of Material Facts**

        A.   Mr. Blandin Fails to Properly Dispute Defendants' Material Facts

Mr. Blandin fails to properly dispute any of defendants' material facts because he fails to comply with the procedural rules.  Further, he cannot rely on the allegations contained in his complaint to defeat summary judgment.  Finally, Mr. Blandin's version of the facts is contradicted by the record.  Consequently, there is no genuine dispute of material fact.

First, Mr. Blandin fails to comply with both the Federal Rules of Civil Procedure and this district's local rules when addressing the defendants' statement of material facts.  Rule 56(c) provides that "a party asserting that a fact is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c).  This district's local rules require that "[e]ach fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted."  D.N.M.LR-Civ. 56.1(b).  Although the Court will liberally construe a pro se plaintiff's filings and hold them to less stringent standards than that of a lawyer, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), this district has long insisted that pro se parties follow the same rules of civil procedure as any other litigant.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Mr. Blandin's response does not comply with the rules.  Mr. Blandin does not state the number of the defendants' facts that are disputed, refer to particular portions of the record upon which he relies, or state the number of the defendants' facts that are disputed.  *See* Doc. 42 at 3–

4. Mr. Blandin does not cite to particular parts of materials in the record or show that the materials cited to by defendants do not establish the absence or presence of a genuine dispute. *Id*. The material facts in defendants' motion are deemed undisputed because they are not specifically controverted.

Second, Mr. Blandin does not support any of his facts with evidence but instead relies on the allegations contained in his amended complaint. *See id.* "A motion for summary judgment that is supported by affidavits[2] or other materials provided under oath gives the adverse party notice that summary judgment is possible; the adverse party must respond with affidavits or other evidence to show a genuine issue of material fact." *Hall*, 935 F.2d at 1110. Mr. Blandin does not present any affidavits or other evidence that show a genuine issue of material fact. Instead, his facts are simply allegations contained in his amended complaint. Doc. 42 at 3–4.

A plaintiff's complaint may be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111. The Tenth Circuit has held that a "verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56 of the Federal Rules of Civil Procedure." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1163 (10th

---

[2] In his motion to postpone filed on February 3, 2023 (Doc. 56), Mr. Blandin asked the Court, among other things, to consider the affidavit of Vicki Gonzalez (Doc. 57). While it is not entirely clear, to the extent Mr. Blandin is asking the Court to consider Ms. Gonzalez' affidavit for the purposes of defendants' motion for summary judgment, the Court declines to consider Ms. Gonzalez's affidavit. Ms. Gonzalez does not have personal knowledge of the events at issue because she was not present during the incident. Her affidavit is based on her interpretation of the evidence, which invades the province of the factfinder. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. Statements not based on personal knowledge must be disregarded. "To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (internal citation and quotation omitted).

Cir. 2021) (internal citation and quotations omitted).  Rule 56 provides that "[a]n affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4).  A "verification" must include an attestation that the person making the statement declares (or certifies, verifies, or states) "under penalty of perjury that the foregoing is true and correct."  28 U.S.C.A. § 1746.  It must include the date of execution and a signature.  *Id*.

      Mr. Blandin's complaint does not contain the language necessary for the Court to consider it "verified."  While it is signed and dated, there is no statement that the facts contained in the complaint are made "under penalty of perjury that the forgoing is true and correct."  *See* Doc. 8 at 35.  The Court cannot treat the allegations in the amended complaint as verified, and cannot treat the amended complaint as evidentiary material for summary judgment purposes.  Mr. Blandin therefore cannot rely on the factual allegations in his amended complaint to defeat summary judgment.  He instead must present evidence that would be admissible at trial, which he failed to do.  Because Mr. Blandin cannot rely on the allegations contained in his complaint, he fails to dispute any of defendants' material facts that are supported by sufficient evidence.

      Finally, even if the Court took Mr. Blandin's allegations into account, the videotape evidence shows that there is no genuine dispute of material fact.  Generally, at the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The Court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly

6

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. The Supreme Court has emphasized that "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal citation and quotation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–248 (emphasis in original). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Summary judgment may be granted where "the [nonmoving party's] evidence is merely colorable, or is not significantly probative." *Id.* at 249–50 (internal citations omitted). Here, defendants present Officer Smith's police report,[3] and body camera video from Officer Smith, Lieutenant Chavez, and Sergeant Ward of the incident involving Mr. Blandin at the DUI check point. Doc. 35-3 (Ex. C); Doc. 36 (Exs. D, E, F).

---

[3] "Police reports are generally excludable as hearsay." *Dorato v. Smith*, 108 F. Supp. 3d 1064, 1071, n.6 (D.N.M. 2015) (internal quotation and citation omitted). In a civil case, police reports may be admissible as public records under rule 803(8)(A)(ii) of the Federal Rules of Evidence. *Id*. "This exception, however, covers only information that the officer observed and recorded in the police report, and not information that the officer received from third parties." *Id*. (quoting *Walker v. City of Okla. City*, 203 F.3d 837 (Table), 2000 WL 135166, at *8 (10th Cir. Feb. 7, 2000) (unpublished)); *see also United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir.1983) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not."). Mr. Blandin did not object to defendants' use of the police report to support the undisputed material facts. The defendants cite the police report to cover only information that Officer Smith observed and recorded, and not information that Officer Smith received from third parties; it therefore may be used as evidence to support summary judgment.

Mr. Blandin's version of the facts is blatantly contradicted by the record.  For example, Mr. Blandin alleges that he "followed the Officers' direction to exit the vehicle and continued to follow their commands" and did not resist the Officers' commands.  Doc. 42 at 3.  As described below, the video tape shows that both before and after he exited his vehicle, Mr. Blandin did not follow Officer Smith's and the other officers' commands.  For these reasons, the Court adopts the statement of material facts in defendants' motion.

      B.  <u>Statement of Undisputed Material Facts</u>

On May 7, 2021, at approximately 10:40 p.m., New Mexico State Police ("NMSP") Officer Kevin Smith, NMSP Officer Gregory Ramirez, NMSP Lieutenant Daniel Chavez, and NMSP Sergeant Kurtis Ward were on duty at a sobriety checkpoint located in the westbound lanes of Alameda at Loretta in Albuquerque, New Mexico.  Doc. 35, Undisputed Material Fact ("UMF") 1.  Mr. Blandin entered the checkpoint driving a white vehicle with a female passenger, Sarah Sadler.  UMF 2.  He approached the stop sign where Officer Smith and Lieutenant Chavez were conducting sobriety checks.  *Id.*  Officer Smith knocked on the vehicle's driver side window in an attempt to speak to Mr. Blandin, but Mr. Blandin did not roll down the car window until Officer Smith knocked a third time.  UMF 3.  Officer Smith observed Blandin to have bloodshot, watery eyes, and he smelled alcohol emanating from the vehicle.  UMF 4.  Based on this information, Officer Smith asked Mr. Blandin how much alcohol he had consumed that evening.  *Id*.  Mr. Blandin denied having consumed any alcohol and told Officer Smith, "You don't smell alcohol."  *Id*.

Officer Smith told Mr. Blandin to put his car in park.  Ex. D at 1:10.  Mr. Blandin asked to speak to a supervisor.  UMF 5.  Lieutenant Chavez approached Mr. Blandin and asked him what was going on.  *Id*.  Mr. Blandin told Officer Smith to "back up," and Officer Smith again

told Mr. Blandin to put his car in park.  UMF 6; Ex. D at 1:12–13.  Mr. Blandin then stated said, "there's no alcohol in this car."  UMF 6.  Officer Smith told Mr. Blandin that the officers will not know that until they speak with him.  *Id.*  Mr. Blandin told the officers that he was experiencing "extreme PTSD" at the moment due to the officer's questioning.  UMF 7.  He stated he was not impaired to drive "until now."  *Id*.  To clarify what Mr. Blandin said, Officer Smith asked "So now you are impaired to drive?"  *Id*.  Mr. Blandin responded that he was angry and scared, and that he was going to call 911.  *Id*.

Officer Smith identified himself and told Mr. Blandin that he was there to ensure that Mr. Blandin was safe to drive.  UMF 8.  Officer Smith explained to Mr. Blandin that he had smelled alcohol.  *Id*.  Mr. Blandin stated that nobody was impaired to drive, "You're not smelling nothing, man," and stated, "We don't drink."  *Id*.  Officer Smith explained that other items such as hand sanitizer and cologne can smell like alcohol, and that it was his job to determine that Mr. Blandin was not too impaired to drive.  *Id*.  Mr. Blandin stated that Officer Smith's "fake narrative smells like bullshit," and told Officer Smith, "You're full of shit."  *Id*.  Mr. Blandin told Officer Smith not to interrupt his 911 call, that it was against the law to do so, that he wanted some safety, and that he was afraid for his life.  UMF 9.  Mr. Blandin told Officer Smith to "get that light out of my fucking face."  UMF 10.  Officer Smith had the light pointed toward Mr. Blandin's shoulder.  *Id*.  Mr. Blandin accused the NMSP officers of being in a gang.  UMF 11.  Mr. Blandin then pointed out colors located on the officers' uniforms and stated "that's a gang color, that's a gang color.  All you guys are gang member murderers . . . with loaded guns."  *Id*.

Mr. Blandin continued to speak to the 911 operator and told Officer Smith not to interrupt him.  UMF 12.  Mr. Blandin stated, "This is Nazi Germany shit" while Officer Smith reiterated to him that he was at a sobriety checkpoint and to follow law enforcement commands.  *Id*.  Mr.

9

Blandin stated that he was never given a command. *Id*. To avoid any further confusion, Officer Smith then commanded Mr. Blandin to exit his vehicle and walk to the front of the officer's vehicle. *Id*. Instead of complying with the command, Mr. Blandin told Officer Smith again to not interrupt his 911 call and that it was illegal to interrupt. UMF 13. Officer Smith stated that multitasking is a necessary task when driving a vehicle. *Id*. Mr. Blandin stated that he was answering questions "here," indicating he was speaking to the 911 operator, and not "here," indicating he would not be speaking to the NMSP officers. *Id*.

Sergeant Ward was standing on the sidewalk and noticed that the conversation between Officer Smith and Mr. Blandin was blocking traffic. UMF 14. Sergeant Ward told Officer Smith that the officers would take Mr. Blandin out of the vehicle if necessary. *Id*. When Mr. Blandin did not comply with Officer Smith's demands, Lieutenant Chavez attempted to speak to Mr. Blandin. UMF 15. Lieutenant Chavez asked Mr. Blandin for his name and instructed him to exit the vehicle. *Id*. Officer Smith told Lieutenant Chavez that he smelled something like alcohol coming from the vehicle, and he did not know if it was hand sanitizer, cologne, or alcohol. *Id*. Mr. Blandin did not give Lieutenant Chavez his name, nor did he exit the vehicle. *Id*. Mr. Blandin told the 911 operator that the NMSP officers all looked intimidating, like they wanted to hurt him, and that they were "too young, too cocky, and too arrogant" for him to deal with. *Id*. Lieutenant Chavez then told Mr. Blandin that Officer Smith already asked him to exit the vehicle. *Id*. Mr. Blandin said that he had been talking a lot, that Lieutenant Chavez knew he did not smell alcohol, and that Officer Smith was lying. *Id*.

Lieutenant Chavez stated that he would pull Mr. Blandin from the vehicle if he did not exit voluntarily. *Id*. Sergeant Ward then approached Mr. Blandin's vehicle while Officer Smith and Lieutenant Chavez attempted to direct Mr. Blandin out of the vehicle. UMF 16. Mr.

10

Blandin finally exited the vehicle, and Officer Smith repeatedly told him to walk to the front of the vehicle. *Id.* The officers tried directing Mr. Blandin out of the road while Mr. Blandin remained on the phone with 911. *Id.* Officer Smith shined his flashlight on the ground to direct Mr. Blandin, while he repeatedly said, "Walk to the front of your vehicle." *Id.* Mr. Blandin said, "Don't touch me," and asked, "Why are you doing that? Why are you guys all rushing me, man? You guys need to give me some fucking space." *Id.*

While Officer Smith was escorting Mr. Blandin out of the roadway, Lieutenant Chavez opened the vehicle's driver side door to ask Ms. Sadler if Mr. Blandin usually acts in this manner. UMF 18. Ms. Sadler stated, "No, he has PTSD. He was severely assaulted in the past." *Id.* Lieutenant Chavez sat down in the driver seat and moved the vehicle out of the road. *Id.* Ms. Sadler said that she tried to calm Mr. Blandin down, but that he would not listen to her. *Id.* She also said that she did not expect Mr. Blandin to react this way, and that she had only known him for a few months. *Id.* Ms. Sadler told Lieutenant Chavez that the vehicle belonged to her. *Id.* She also told Lieutenant Chavez that Mr. Blandin attended AA (Alcoholics Anonymous) meetings every week, and that he had been sober for at least six months. *Id.*

Officer Smith and Sergeant Ward escorted Mr. Blandin to the sidewalk and attempted to lead him away from the road, toward Officer Smith's police unit to conduct further sobriety tests. UMF 19. While the officers directed Mr. Blandin, Mr. Blandin stayed on the phone with 911 and kept interrupting Officer Smith's commands to say, "Don't touch me, man," "Give me some space," and "De-escalate." UMF 20. Officer Smith told Mr. Blandin to stop talking, to listen to the officer, and to calm down. *Id.* Mr. Blandin kept asking, "Why are you in my face? Give me some space." *Id.* Officer Smith told Mr. Blandin to stop walking away from the officers because Officer Smith was trying to speak with him. *Id.* Officer Smith again told Mr. Blandin that the

officers were trying to ensure that he was not too impaired to drive, and he would be on his way if he was not impaired.  *Id*.

  Mr. Blandin did not comply.  UMF 21.  Instead, Mr. Blandin continued to speak with the 911 operator and asked all of the officers for their badge numbers.  *Id*.  Sergeant Ward then commanded Mr. Blandin to cooperate with law enforcement and to keep walking to the front of Officer Smith's police unit so they could conduct field sobriety tests.  *Id*.  Mr. Blandin slowly started walking and turned around several times to face the officers.  *Id.*  Mr. Blandin yelled, "I'm cooperating . . . . You need to de-escalate."  *Id*.  Sergeant Ward commanded Mr. Blandin to keep walking and told him that he just wanted to ensure he was safe to drive.  *Id*.  Mr. Blandin stated that he was safe to drive before the officers started harassing him.  *Id*.  Officer Smith repeatedly told Mr. Blandin to walk in front of his police unit.  *Id*.  Mr. Blandin did not walk, continued to face the officers, stated he had done nothing multiple times, and told the officers to leave him "the fuck alone," and not to get in his "fucking face."  *Id*.

  As Mr. Blandin remained standing, Officer Smith used his hands to push Mr. Blandin slightly forward, toward the police unit.  UMF 22.  Mr. Blandin staggered slightly, pulled away from Officer Smith, and asked, "Why are you pushing me?"  *Id*.  At this point, Mr. Blandin was irate, would not continue to walk forward to take the sobriety tests, and continued to yell at the officers.  UMF 23.  Sergeant Ward directed Officer Smith to arrest Mr. Blandin.  *Id*.  Officer Smith seized Mr. Blandin's left wrist to place him under arrest while Mr. Blandin stated, "I'm standing my ground" and attempted to move away from the officers.  *Id*.  Officer Smith performed a leverage takedown to the rear and assumed a dominant position on top of Mr. Blandin.  UMF 24.  To ensure the officers' safety, Sergeant Ward had his taser ready to deploy,

but he did not use it.  *Id*.  Officer Ramirez and Officer Smith were able to safely secure Mr. Blandin's arms and place him under arrest.  *Id*.

While being arrested, Mr. Blandin yelled, "I haven't even done anything." UMF 25.  Sergeant Ward told Mr. Blandin to stop resisting.  *Id.*  Mr. Blandin kept yelling, "I'm not resisting."  *Id.*  Sergeant Ward stated in a calm tone that they were trying to ensure he was safe to drive.  *Id*.  Mr. Blandin yelled, "You guys have me.  Are you serious?  This is what's going on?" and "You guys are pushing and bullying me.  You guys are bullying me.  I'm not going to be fucking bullied."  *Id*.  Sergeant Ward told Mr. Blandin that his behavior was not normal.  *Id*.

Mr. Blandin continued to yell at the officers throughout his arrest, stating that they were all gang members and asked, "You gonna kneel on my fucking neck now?  You guys are fucking hurting me."  UMF 26.  The officers were not on Mr. Blandin's neck, and Sergeant Ward stated, "Nobody's touching your neck, Sir."  *Id.*  Sergeant Ward told Mr. Blandin that he did not want to see Mr. Blandin or anyone else get hurt.  *Id*.  While Officer Smith searched Mr. Blandin's pockets, Mr. Blandin complained, "This is an illegal search."  *Id*.  Officer Smith explained that because Mr. Blandin was under arrest, the search was not illegal.  *Id*.  Mr. Blandin yelled, "Under arrest for what?"  *Id.*  Sergeant Ward explained that Mr. Blandin was under arrest for resisting, evading, and obstructing.  UMF 27.  Mr. Blandin was then lifted to his feet and escorted to Officer Smith's patrol unit.  *Id*.  Mr. Blandin again asked, "You guys are arresting me for doing what?"  *Id*.

Once Mr. Blandin and the officers arrived at Officer Smith's police unit, Mr. Blandin was instructed to sit down inside.  UMF 28.  Officers told Mr. Blandin that they would help him into the vehicle and to put his leg inside.  *Id.*  Mr. Blandin asked, "What are you talking about?"  *Id.* Officer Smith and Sergeant Ward told Mr. Blandin to get into the vehicle.  *Id*.  Mr. Blandin

13

stated that he was not in a position to get into the vehicle due to the way Officer Smith was holding him. *Id*. Sergeant Ward asked why Blandin was yelling and stated they were "right here," in front of Mr. Blandin. UMF 29. Mr. Blandin yelled that the officers were "evil, sadistic people." *Id*. Sergeant Ward stated that they were caring people who did not want to see Mr. Blandin hurt anyone. *Id*. Mr. Blandin then looked directly at Sergeant Ward and told him to film the interaction, and to not turn off his camera. UMF 30. At no point during this altercation with Mr. Blandin did the officers turn off their body-worn cameras. *Id.* Officer Smith buckled Mr. Blandin's seatbelt in the backseat of his police unit. *Id*. Mr. Blandin stated, "Are you fucking serious? This is how you guys treat Nazis." *Id.*

Meanwhile, Lieutenant Chavez parked Ms. Sadler's vehicle, and he and Ms. Sadler exited the vehicle. UMF 31. Lieutenant Chavez told Ms. Sadler where to stand and walked over to where the other officers were arresting Mr. Blandin. *Id.* Lieutenant Chavez picked up Mr. Mr. Blandin's cell phone while Officer Smith searched Mr. Blandin's person. *Id*. Lieutenant Chavez spoke into Mr. Blandin's cell phone, identified himself, and let the 911operator know that Mr. Blandin had been placed under arrest. UMF 32.

After securing Mr. Blandin into Officer Smith's patrol unit, Sergeant Ward approached Ms. Sadler and asked about her relationship with Mr. Blandin. UMF 33. Ms. Sadler said that she had been dating Mr. Blandin for a couple of months. *Id*. Ms. Sadler again told Sergeant Ward that Mr. Blandin had PTSD, had been assaulted, and had a violent past. *Id*. Ms. Sadler stated she did not have any alcohol that evening and provided her license to Sergeant Ward. *Id*.

After Mr. Blandin was placed into the rear of Officer Smith's vehicle, he was transported to Lovelace for medical clearance after complaining of an injury. UMF 34. Mr. Blandin was released from the hospital without injury and was cleared to be incarcerated*. Id.* After Mr.

Blandin was cleared from the hospital, he was taken to the Metropolitan Detention Center in Albuquerque, and booked on the charge of resisting, evading, or obstructing an officer (resisting), in violation of N.M. STAT. ANN. § 30-22-01(D).  UMF 35.

On November 29, 2021, a bench trial commenced in Bernalillo Metropolitan Court. UMF 36.  Judge Neil C. Candelaria found Mr. Blandin guilty and convicted Mr. Blandin of resisting or obstructing an officer in violation of Albuquerque City Code § 12-2-19.  *Id.*  Mr. Blandin's sentence was to be deferred for a period of ninety (90) days on unsupervised probation on the condition that Mr. Blandin had no further arrests or violations of the law.  UMF 37.  On December 28, 2021, Mr. Blandin filed an appeal of his conviction of resisting or obstructing an officer.  UMF 38.  That appeal had not been decided by the time defendants filed their motion for summary judgment.[4]  *Id.*

## IV.  Discussion

In the motion for partial summary judgment, defendants assert that the Court should dismiss Mr. Blandin's Fourth Amendment claims for illegal seizure, unreasonable search, and excessive force because Officer Smith is entitled to qualified immunity.  Doc. 35 at 18–26.  They further contend that Officer Ramirez, Lieutenant Chavez, and Sergeant Ward are entitled to qualified immunity for failure to intervene because Mr. Blandin cannot establish a violation of his constitutional rights.  *Id.* at 26–27.  Mr. Blandin contends that whether defendants are entitled to qualified immunity is a question of fact for the jury to decide.  Doc. 42 at 12–14.  Mr. Blandin

---

[4] It appears that the appeal now has been decided, but it is not clear to the Court what the outcome was.  *See* Docs. 59, 60.  The Court ordered the parties to clarify this point.  Doc. 60. This clarification, however, is not relevant to whether the officers are entitled to qualified immunity.  The Court therefore decides this motion without the requested clarification.

15

misunderstands the nature of a qualified immunity defense. Because Mr. Blandin's arguments do not meet his burden under the qualified immunity doctrine, summary judgment is appropriate.

### A. Officer Smith is Entitled to Qualified Immunity

Summary judgment motions involving a qualified immunity defense are decided somewhat differently than other summary judgment motions. *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). "When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). This is a heavy burden for the plaintiff. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)). "'First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue.'"[5] *Nelson*, 207 F.3d at 1206 (quoting *Albright*, 51 F.3d at 1534–35). The Court will grant qualified immunity if the plaintiff fails to meet either prong of the qualified immunity test. *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003) (internal quotation marks omitted). The Court need not address the two-part qualified immunity test in order; it has discretion to decide either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If, and only if," the plaintiff establishes both elements of the qualified immunity test does a defendant then bear the traditional burden of showing "'that there are no genuine issues of material fact and that he or

---

[5] "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal citations and quotations omitted).

she is entitled to judgment as a matter of law.'" *Nelson*, 207 F.3d at 1206 (quoting *Albright*, 51 F.3d at 1535)). In other words, although the court "review[s] the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Medina*, 252 F.3d at 1128 (citation omitted).

In their motion for summary judgment, defendants argue that Officer Smith is entitled to qualified immunity on Mr. Blandin's Fourth Amendment illegal search, unreasonable seizure, and excessive force claims. Defendants contend that the seizure and search were proper because Officer Smith had an articulable reason to believe that Mr. Blandin may be an impaired driver and because there was probable cause to arrest him. Defendants further argue that Officer Smith conducted a lawful search incident to an arrest and that Officer Smith's actions did not constitute excessive force. Doc. 35 at 18–26. Finally, defendants contend that because Officer Smith did not use excessive force, Officer Ramirez, Lieutenant Chavez, and Sergeant Ward are entitled to qualified immunity because Mr. Blandin fails to establish a constitutional violation of excessive force for which the other officers failed to intervene. *Id*. at 26–27.

Mr. Blandin is a pro se litigant, and the Court therefore reviews his "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A "broad reading" of a pro se plaintiff's filings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id*. Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)

(internal quotation marks and citations omitted).  Even a broad and liberal reading of Mr. Blandin's response reveals no effort to meet his burden of proof on either prong.

In his response, Mr. Blandin argues that "the determination of whether the Defendants were reasonable in their conduct against the Plaintiff constitutes a genuine dispute of material fact to be determine in a trial by [a] jury and is therefore inappropriate for summary judgment." Doc. 42 at 13.  "What Plaintiff fails to comprehend, however, is that it is if, *and only if*, he satisfies his two-part burden that Defendants then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and [they are] entitled to judgment as a matter of law."  *Rojas v. Anderson*, 727 F.3d 1000, 1004–05 (10th Cir. 2013) (footnote, internal citation and quotation marks omitted) (emphasis in original).  Mr. Blandin does not meet his burden of showing that the defendant's actions violated a constitutional or statutory right or that the constitutional or statutory rights the defendants allegedly violated were clearly established at the time of the conduct at issue.

In *Rojas*, the Tenth Circuit held that defendants were entitled to qualified immunity where "[p]laintiff made little, if any, attempt to meet his 'heavy two-part burden,'" failed to discuss how defendants' actions violated his constitutional rights, failed to discuss whether the rights at issue were clearly established, and provided no relevant case citations.  727 F.3d at 1003.  In *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013), because plaintiff "didn't even try to meet" his burdens of proof, the Tenth Circuit found the district court's grant of summary judgment based on qualified immunity "inexorabl[e]" and "unassailable."  As in *Rojas* and *Smith*, Mr. Blandin's response contains no discussion of how defendants' actions violated his constitutional rights, fails to discuss whether the rights at issue were clearly established, and

contains no relevant case citations.⁶ *See* Doc. 42. Mr. Blandin states that "there is no dispute that Plaintiff has a clearly established constitutional right to be free from unreasonable search and seizure as described in the instant matter," and—without citation to any evidence—states that Officer Smith as "a long history of repeat offenses ranging from questionable search and seizures to targeting members of the community with disabilities and escalating those cases to violent encounters . . . ." Doc. 42 at 13. These vague and conclusory statements do not meet Mr. Blandin's two-part burden. Because Mr. Blandin fails to meet his burden of proof on either prong, the Court finds that Officer Smith is entitled to qualified immunity.

  B. <u>Officer Ramirez, Lieutenant Chavez, and Sergeant Ward are Entitled to Qualified Immunity</u>.

In Count II of Mr. Blandin's amended complaint, he brings a claim for failure to intervene against Officer Ramirez, Lieutenant Chavez, and Sergeant Ward. Doc. 8 at 27–28. "[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).

> To establish a constitutional violation under a 'failure to intervene' theory, [a plaintiff] must show: (i) the defendant officer was present at the scene; (ii) the defendant officer witnessed another officer applying force; (iii) the application of force was such that any reasonable officer would recognize that the force being used was excessive under the circumstances; and (iv) the defendant officer had a reasonable opportunity to intercede to prevent the further application of excessive force, but failed to do so.

*Erickson v. City of Lakewood, Colorado*, 489 F. Supp. 3d 1192, 1200 (D. Colo. 2020). Mr. Blandin alleges that Officer Ramirez, Lieutenant Chavez, and Sergeant Ward failed to intervene to prevent Officer Smith's use of excessive force against him. Doc. 8 at 27–28. However,

---

⁶ Mr. Blandin cites to several cases that discuss qualified immunity generally but does not cite to any case law that demonstrates that Officer Smith's conduct during the encounter with Mr. Blandin violated a clearly established constitutional right. *See* Doc. 42 at 12–14.

19

"[e]stablishing a constitutional violation is a necessary predicate to any claim that an officer failed to intervene." *Mata v. City of Farmington*, 791 F. Supp. 2d 1118, 1156 (D.N.M. 2011); *see also Hall v. Burke*, 12 F. App'x 856, 861 (10th Cir. 2001) (unpublished) ("An officer who fails to intercede is liable . . . where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official."). Because the Court finds that Officer Smith is entitled to qualified immunity, there is no underlying constitutional violation in which Officer Ramirez, Lieutenant Chavez, and Sergeant Ward failed to intervene.

C. Conclusion

There is no genuine dispute of material fact, and defendants are entitled to judgment as a matter of law. Officer Smith, Officer Ramirez, Lieutenant Chavez, and Sergeant Ward are entitled to qualified immunity because Mr. Blandin cannot establish a violation of his clearly established constitutional rights. Because the qualified immunity issue is dispositive, the Court does not address defendants' argument under *Heck*.

IT IS THEREFORE ORDERD that defendants NMSP Officer Kevin Smith's, NMSP Lieutenant Daniel Chavez's, NMSP Officer Gregory Ramirez's, and NMSP Sergeant Kurtis Ward's Motion for Partial Summary Judgment No. 1: Dismissal of Counts I and II of Plaintiff's Amended Complaint, filed on December 18, 2022 (Doc. 35), is GRANTED. Counts I and II of Mr. Blandin's amended complaint are dismissed with prejudice.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent